UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERGON - ST. JAMES, INC. | CIVIL ACTION |
| VERSUS | NO: 15-1121 and consolidated cases |
| PRIVOCEAN M/V, ET AL. | SECTION: "A" (3) |

## **ORDER AND REASONS**

The following motion is before the Court: **Motion to Compel Production of Mooring Line Samples and Expert Testing; Limited Extension of Expert Deadline for Cordage Expert Report (Rec. Doc. 292)** filed by Raven Energy, LLC.[1] Petitioners, the Privocean interests, oppose the motion. The motion, scheduled for submission on November 29, 2017, is before the Court on the briefs without oral argument.[2]

The case arises out of a breakaway incident in which the M/V PRIVOCEAN broke away from its moorings at the Convent Marine Terminal on the east bank of the Mississippi River. The PRIVOCEAN drifted across the river and allided with other

---

[1] The relief sought in this motion was the subject of a motion previously filed on November 6, 2017, before Magistrate Judge Knowles. Judge Knowles dismissed the motion because he was persuaded that he was without authority to grant or deny a motion to compel after the discovery deadline. (Rec. Doc. 291). Raven disputes that the discovery deadline pertaining to expert discovery has expired.
    Raven refiled the motion to compel in its present form on November 13, 2017, and requested expedited consideration given that its expert reports are currently due on December 1, 2017, and given the turnaround time associated with the expert analysis that it seeks (collection of the samples, shipment to the UK for testing, and preparation/production of a report). The Court denied expedited consideration solely because of scheduling issues related to the Thanksgiving holiday but advised the parties that the expert report deadline would be extended as necessary should the Court grant the motion to compel. (Rec. Doc. 296).

[2] Crescent Towing & Salvage Co., Inc. supports and joins in Raven's motion to compel. (Rec. Doc. 299).

1

vessels and the Ergon terminal facility. Raven was the owner and operator of the Convent facility. A flood of litigation has ensued.

Given that this marine casualty resulted from a vessel breaking free of its moorings, the strength (or lack thereof) and structure of the mooring lines, and related issues of whether the parted mooring lines were properly maintained, monitored, and/or whether they should have been replaced, are all pertinent considerations in determining why the incident occurred and which parties are liable for the resulting damages. Therefore, inspections and testing related to the PRIVOCEAN's mooring lines began immediately following the incident. It is the Court's understanding that the numerous rounds of testing of the mooring lines were performed jointly with the last round of testing having taken place in April 2016.

This case is subject to a detailed scheduling order, which was prepared by the parties with amendments by the Court. (Rec. Doc. 222). The scheduling order contains a single discovery cutoff date of September 15, 2017, which is not qualified with the term "fact." In other words, the scheduling order contains no ostensible suggestion of separate cutoff dates for fact and expert discovery. But on October 20, 2017, Raven requested access to the mooring lines so that its expert from the UK (Mr. Stephen Banfield ) could inspect the lines while he was in New Orleans. The Privocean interests agreed to the visual inspection in the spirit of cooperation.[3] At the close of the inspection, Mr. Banfield, on behalf of Raven, requested permission to cut four samples

---

[3] The Court finds no merit to the suggestion that this courtesy by the Privocean interests and their counsel operated as a waiver to any subsequent challenge to the timeliness of additional sampling or testing.

from the mooring lines for the purpose of conducting yarn testing in the United Kingdom. Petitioners refused Banfield's oral request for the samples, and again refused the request following a more formal email request from Raven's counsel.[4] This Motion to Compel followed.[5]

The Court is persuaded that the type of testing that Raven wants to perform—which is apparently of a different nature than the testing that was performed up until April 2016—is very important to this case. On November 1, 2017, Petitioners produced their expert report, which was prepared by AMTI. Those experts were unpersuaded that the mooring lines broke due to any fault by the Privocean interests. (Rec. Doc. 292-7, AMTI Report). Their concluding opinion states as follows: "Based on AMTI's inspection and the destructive testing to date, it appears that the Yancheng mooring lines ***were defectively manufactured***, resulting in a less than expected actual breaking strength." (*Id.* at 4) (emphasis added). Nothing in the report suggests that this conclusion was based on any actual testing (for the specific purpose of determining defective manufacturing) or analysis; rather, this opinion seems to derive from the experts' inability to find any other reason for the lines' failure.

---

[4] According to Petitioners, they objected to the request for several reasons, including that the request had not been properly made, was not timely, and would necessarily cause them to incur significant additional costs at a late stage of the case. (Rec. Doc. 297, Opposition at 4). Raven contends that the samples could be cut without significant cost/delay/effort, and that even though the testing would be destructive as to the actual samples, there would be many more feet of line remnants from which the Privocean interests could take their own samples. (Rec. Doc. 292-1, Memo in Support at n.10). Raven's assertions do not appear to be disputed.

[5] The Court rejects Petitioners' contention that Raven's motion should be denied simply because Raven's request for samples was never made the subject of a formal Rule 34 discovery request. At this stage it is obvious that such a request would be futile and only delay matters further.

Raven's sole basis for seeking relief from this Court is to ferret out AMTI's contention as to defective manufacturing, which the Court assumes the Privocean interests intend to urge at trial.[6] As things stand now, the Court is persuaded that AMTI's opinion as to defective manufacture would trigger a meritorious *Daubert* challenge. Therefore, absent a withdrawal of the defective manufacturing issue by the Privocean interests, which is not likely to occur, the Court will grant Raven's motion for production of the requested samples and allow the testing proposed by Mr. Banfield. Given that the proposed sampling and testing cannot be completed so as to allow Raven to produce Banfield's expert report by the current deadline of December 1, 2017, the Court will also allow for a limited extension of Raven's expert report deadline solely as to submission of Banfield's expert report.

That said, while the Court shares Petitioners' concerns regarding the sanctity of the current scheduling order, the Court remains optimistic that the relief Raven seeks can be accommodated either without altering any other deadlines in the scheduling order, or altering them minimally, especially if the Privocean interests require additional time to provide a rebuttal expert report limited to the defective manufacturing issue. The Court directs the parties to jointly propose a workable time table (including a practicable date by which Raven can produce Banfield's report), being mindful of the need to proceed cooperatively and expeditiously, and with due consideration for minimizing costs while maximizing everyone's enjoyment of the upcoming holiday season. The

---

[6] The Court recognizes that Raven's expert asked for the samples before Petitioners produced their report on November 1, 2017. The Court attaches no significance to the chronology of events. Raven points out that the Privocean interests had asserted a claim against the line manufacturer but voluntarily dismissed that party without prejudice (Rec. Doc. 180).

Court also directs the parties to confer and reach an agreement as to whether a representative of all parties will attend the testing in the United Kingdom or whether the yarn testing can be videotaped (for those parties who decline to incur the cost of traveling) or both.

Accordingly;

**IT IS ORDERED** that the **Motion to Compel Production of Mooring Line Samples and Expert Testing; Limited Extension of Expert Deadline for Cordage Expert Report (Rec. Doc. 292)** filed by Raven Energy, LLC is **GRANTED** as explained above.

November 29, 2017

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE