UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERGON - ST. JAMES, INC. | CIVIL ACTION |
| VERSUS | NO: 15-1121 and consolidated cases |
| PRIVOCEAN M/V, ET AL. | SECTION: "A" (3) |

## ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 345)** filed by Raven Energy, LLC. Privocean and Cargill International SA oppose the motion.[1] The motion, scheduled for submission on March 7, 2018, is before the Court on the briefs without oral argument.

This case arises out of a breakaway incident in which the M/V PRIVOCEAN broke away from its moorings at the Convent Marine Terminal on the east bank of the Mississippi River. The PRIVOCEAN drifted across the river and allided with the M/T BRAVO, which was moored at the Ergon – St. James terminal and dock on the west bank of the river. As a result, Ergon and the M/T BRAVO suffered extensive damages.

Raven was the owner and operator of the Convent Marine Terminal facility ("CMT") where the PRIVOCEAN was berthed prior to the breakaway.

At the time of the incident, the PRIVOCEAN was operating under a head time charter between Bunge, S.A. and Privocean; under a sub-time charter from Bunge to

---

[1] "Privocean" comprises Privocean Shipping Ltd. and Bariba Corp.

Cargill International SA; under a voyage charter from Cargill to Foresight Coal Sales, LLC, for loading of coal at CMT.

Raven has been tendered by Privocean as a direct defendant in the limitation proceedings. In turn, Raven filed various defense/indemnity claims, including claims against Privocean and Cargill.

A bench trial is scheduled for April 23, 2018.

In its motion for summary judgment (345), Raven seeks judgment as a matter of law on all claims that have been asserted against it as to its liability for the PRIVOCEAN's breakaway and the resulting damages. Raven also seeks judgment as a matter of law as to the indemnity (and other) claims that it has asserted against Privocean and Cargill.

At the outset, the Court denies the motion insofar as Raven seeks judgment as a matter of law as to its fault for the PRIVOCEAN's breakaway. The Court agrees that Raven's allocation of fault, if any, likely would be minimal but the Court is persuaded that the other claimants have sufficiently created an issue of fact as to whether Raven is chargeable with some degree of fault, even if one percent. If Raven is to be absolved of all liability for the breakaway then that must occur following the trial on the merits.

Raven argues that the question of its fault for the breakaway is nonetheless irrelevant because Privocean is bound by CMT's Terminal Rules and Regulations (" the R&R") (Rec. Doc. 345-2, Exhibit A), which contain indemnity obligations that attach even when Raven is at fault. Raven argues that Cargill is likewise bound by the R&R and its indemnity provisions because the R&R was incorporated into the voyage charter

between Cargill and Foresight.

Privocean does not concede that it is bound by the R&R, and Cargill vehemently disputes that it is bound. But even if Privocean and Cargill were bound by the R&R, Privocean and Cargill argue that the the R&R does not call for them to indemnify Raven for its own fault.

A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981). It should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage. *Id.*

A contract to indemnify another for his own negligence imposes an extraordinary obligation. *Id.* Therefore, a contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligent act unless the contract clearly expresses such an obligation in unequivocal terms. *Id.* (citing *United States v. Seckinger*, 397 U.S. 203, 211-13 (1970); *Transcon. Pipe Line Corp. v. Mobile Drilling Barge*, 424 F.2d 684, 691-92 (5th Cir. 1970)). An indemnitor is entitled to express notice that under his agreement, and through no fault of his own, he may be called upon to pay damages solely caused by the negligence of his indemnitee. *Id.* General maritime law has not adopted the "express negligence test, which requires an indemnity provision to expressly state whether a party is to be indemnified for its own negligence. *East v. Premier, Inc.*, 98 Fed. Appx. 317, 320 (5th Cir. 2004) (citing *Theriot v. Bay Drilling Corp.*,

3

783 F.2d 527, 540-41 (5th Cir. 1986)).

Two indemnity provisions in the R&R are directly implicated by Raven's claims against Privocean and Cargill. First, Section 9(E) of the R&R is an indemnity provision that applies to the gamut of liabilities that arise directly or indirectly from pollution caused by a vessel. (Rec. Doc. 345-2, Exhibit A at 20). Section 9(E) carves out an express exception to the otherwise broad pollution-based indemnity provided in the section: "[E]xcept where such damages, losses, costs, or liability are caused by **the sole negligence** of CMT Indemnitees." *Id.* (emphasis added). Raven contends that if its sole negligence is the only *exclusion* from the indemnity obligation imposed by § 9(E) then its comparative negligence when less than 100 percent at fault must necessarily be included.[2]

The Court agrees and can advise the parties with certainty that Raven will not be found 100 percent at fault for any pollution damages in this case. Thus, to the extent that part of Ergon's claim includes a pollution component, the parties bound by the R&R with be required to indemnify CMT.

The second provision of the R&R directly implicated by Raven's claims against Privocean and Cargill, is § 9(C), which reads as follows:

> All Vessels and Users of CMT hereby agree to defend, indemnify and hold harmless CMT Indemnitees from and against any and all claims, actions, damages, liability or expense, including court costs and attorney's fees, in connection with the loss of life, bodily injury, disease, or any other injury of any type whatsoever, **involving anyone**, including visitors, and damage, contamination or loss of property, including the User's Cargo, incident to or resulting from their use of CMT facilities.

---

[2] Privocean concedes as much and Cargill's argument to the contrary is unpersuasive.

4

(Rec. Doc. 345-2, Exhibit A at 19) (emphasis added).

Raven contends that this paragraph on its own expresses the parties' clear and unequivocal intent that Raven should be indemnified for its own negligence. Raven argues that the phrase "involving anyone" evinces an intent for the indemnity obligations to cover the potential fault of any party involved, including Raven.

The Court finds it far more likely that "involving anyone" was intended to refer to the party making the claim for injury, etc., since the phrase is expressly clarified to include visitors. "Involving anyone" is not the same as "without regard to cause," which can be interpreted to include the indemnitee's own negligence. *See East v. Premier, Inc.*, 98 Fed. Appx. 317 (5th Cir. 2004) (unpublished). But whatever "involving anyone" means, it does not unequivocally express the intent to indemnify Raven for its own negligence.

Raven also contends that § 9(C) unequivocally expresses the parties' intent to indemnify Raven for its own negligent acts when considered in the context of other sections of the R&R not directly implicated by Raven's indemnity claims against Privocean and Cargill. To the contrary, the Court is persuaded that those other sections of the R&R undermine Raven's position with respect to § 9(C).

Although maritime law does not require an explicit statement that the indemnitee's own negligence is included in the indemnity obligation, CMT drafted the R&R to include such explicit statements in several other indemnity sections. Section 5(A)(5) extends the indemnity obligation for claims involving coal or other cargo to "any claim for loss or damage howsoever same shall be caused . . . even if caused in whole

5

or in part" by CMT's "negligence, strict liability, or other fault." (Rec. Doc. 345-2, Exhibit A at 10).

Section 7(C) applies to claims related to equipment or personnel that a vessel places at CMT's dock facility. That provision explicitly shifts all risk associated with that equipment or personnel to the vessel and the vessel agrees to indemnify CMT for any loss or damage to the equipment/personnel "howsoever same shall be caused, even if caused in whole or in part by the negligence, strict liability, or other fault" of CMT. (Rec. Doc. 345-2, Exhibit A at 14).

The Court has already addressed § 9(E) regarding pollution damages. The indemnification language used in that section is less explicit in that it requires the reader to make a negative inference but it is nonetheless an unequivocal expression of the intent to indemnify CMT for its own fault so long as that fault is not 100 percent.

Finally, § 11(A) applies to claims related to delay damages incurred by a vessel. That section includes explicit language absolving CMT of responsibility for any such damages incurred by the vessel "for any cause, including the negligence, sole or concurrent" of CMT. (Rec. Doc. 345-2, Exhibit A at 21).

While maritime law does not require that § 9(C) contain the explicit language found in §§ 5(A)(5), 7(C), 11(A), or even the inferential text of § 9(E), it remains that CMT drafted §9(C) to contain only a general statement that the indemnity obligations imposed by that section apply to "any and all claims," which as a matter of law is insufficient to clearly and unequivocally express the intent to indemnify CMT for its own negligence. *Seal Offshore, Inc. v. Am. Stand., Inc.*, 736 F.2d 1078, 1081 (5th Cir. 1984)

6

(citing *Mott v. ODECO*, 577 F.2d 273 (5th Cir. 1978); *Brown v. Seaboard Cost Line R.R.*, 554 F.2d 1299, 1302 n.3 (5th Cir. 1977)). The stark lack of explicitness in § 9(C) when compared to the indemnity/risk allocations discussed above only serves to further strain the rather implausible suggestion that the phrase "involving anyone" constitutes an *unequivocal* expression of the intent to confer indemnity for CMT's own negligence.

The Court finds unpersuasive Raven's melding together of §§ 9(C) & (E) so as to arrive at the conclusion that § 9(C) unequivocally indemnifies Raven for its own fault. Section 9(E) does refer to "such obligation" to indemnify, which Raven reasonably characterizes as referring back to a previously established indemnity obligation. But it is not clear that the reference is being made to § 9(C) in particular.

Finally, the Court rejects the suggestion that § 9(C) would be meaningless if it did not include Raven's own negligence because as a matter of law Raven can only be held responsible for its own comparative fault. Although the Court initially found that argument to have merit when it denied Cargill's motion for judgment on the pleadings, (Rec. Doc. 229), it remains that the controlling jurisprudence (*Corbitt* and its progeny) establishes an "unequivocalness" standard regarding indemnification for one's own fault because the term indemnification by itself is insufficient, even in a comparative fault setting, to confer such indemnity.

In sum, because the other claimants have sufficiently created an issue of fact as to whether Raven is chargeable with some degree of fault for the PRIVOCEAN's breakaway, and because Raven has not demonstrated that those parties bound by the R&R owe it the extraordinary obligation of indemnification for its own negligence, except

7

with respect to pollution related claims, Raven's motion for summary judgment is denied.[3]

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 345)** filed by Raven Energy, LLC is **DENIED**.

April 2, 2018

JAY C. ZAINEY<br>
UNITED STATES DISTRICT JUDGE

---

[3] Cargill includes in its memorandum in opposition a statement that it moves the Court for entry of summary judgment in its favor. (Rec. Doc. 372 at 4). Cargill did not file its own cross motion for summary judgment, regardless of the title that it gave its opposition memorandum. Moreover, the Court has denied Raven's motion without reaching the question of whether Cargill is bound by the R&R.