UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERGON-ST. JAMES, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1121 C/W 15-1137 & 15-1206** |
| **M/V PRIVOCEAN, et al.** | **JUDGE JAY C. ZAINEY** |
| | **MAGISTRATE JUDGE DANIEL E. KNOWLES, III** |
| | *Applies to All Cases* |

### ERGON'S SUPPLEMENTAL PRE-TRIAL MEMORANDUM REGARDING THE PROPOSED LIABILITY STIPULATION

Ergon - St. James, Inc., Ergon, Inc., Ergon Refining, Inc., and Magnolia Marine Transport Co., (collectively at times "Ergon") and their Underwriters[1] submit the following Supplemental Pre-Trial Memorandum with Respect to the Proposed Liability Stipulation in light of today's telephone conference with the Court. Ergon submits this supplemental memorandum in order to shed light on its reasoning for rejecting the Privocean Interests' proposed stipulation as currently written. As discussed below, Ergon has no intention of introducing repetitive evidence regarding why the M/V PRIVOCEAN broke away from CMT, but does intend to introduce concise evidence of causation for the reasons discussed below.

First, Privocean Interests' argument regarding Ergon's alleged fault is not a straightforward factual dispute. This issue is not as simple as proving whether the events unfolded one way or another. This event involved a domino effect of actions and inactions that led to the point where Ergon personnel were involved in an allegedly negligent manner and Ergon must be permitted to introduce evidence as to how and why its personnel were in that position in the first place. If Ergon is prevented from doing so, it would be akin to a three-car collision in which the second car

---

[1] Certain Interested Underwriters at Lloyd's of London and PartnerRE Ireland Insurance.

is blamed for damaging the third car, but not permitted to introduce evidence that it was initially hit by the first car, which would clearly prejudice Ergon.

Second, Privocean Interests' argument for Ergon's comparative fault is that Ergon's actions constituted a superseding and intervening cause with respect to a portion of the damages to Ergon's terminal and the M/T BRAVO.[2]  Under well-settled precedent of the United States Supreme Court and United States Court of Appeals for the Fifth Circuit, Privocean Interests' argument requires that they prove, in part, that Ergon's actions were separate and distinct from the allision caused by Privocean Interests.[3]  This is why Privocean Interests are cleverly attempting to bifurcate this one catastrophic event into two distinct events through their stipulation. Ergon must be afforded the opportunity to show that this was one giant, continuing emergency situation that started well-before the actual breakaway and did not end until all vessels and structures were fully separated and secured.

Third, while Ergon intends to prove that Privocean Interests' version of the facts with respect to Ergon is untrue, Ergon is also asserting the defense that Ergon is not liable because any actions were taken *in extremis*.[4]  Ergon must be permitted to put on evidence from witnesses from multiple

---

[2] R. Doc. 406, p. 34, 63 at ¶¶ 187-188, 73 at ¶ 74.

[3] *See e.g. Exxon Co., U.S.A. v. Sofec, Inc.,* 517 U.S. 830, 837 (1996); *Nunley v. M/V DAUNTLESS COLOCOTRONIS,* 727 F.2d 455, 464 (5th Cir. 1984).

[4] *The Blue Jacket,* 144 U.S. 371 (1892). ); *see also The Benefactor,* 102 U.S. 214, 217-18 (1880); *Union Oil Co. of Cal. v. Tug Mary Malloy,* 414 F.2d 669, 674 (5th Cir. 1969). Privocean Interests' "land-based" negligence argument is meritless, but, regardless, the same rule applies. Under the sudden emergency defense, "One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, as long as he has acted in a reasonably prudent manner once confronted, and, unless the emergency was brought about by his own negligence." *McCann v. State Farm Mut. Auto. Ins. Co.*, 483 So.2d 205, 211 (La. Ct. App. 3 1986) (citations omitted).

parties in multiple situations to testify that the entire event—from the dire situation that existed pre-breakaway until every party was separated and secured—was an emergency situation.

Fourth, relevant to Ergon's defense is the fact that Bariba and the M/V PRIVOCEAN's crew knew about the threat of the breakaway for days and never once notified Ergon or the BRAVO of the threat, despite taking pictures of the M/T BRAVO discharging at Ergon's dock and sending them to management at Bariba. Privocean Interests never even notified Ergon or M/T BRAVO of the actual breakaway. Ergon must be permitted to put on related evidence to support its defense.

Fifth, Privocean Interests' argument against Ergon is based on their contention that Ergon did not properly train Kevin Labat to react in these types of emergency situations, but Privocean Interests had no such procedures and training of their own employees and crew members, who were actual mariners. Ergon must be permitted to offer evidence to show the hypocrisy in Privocean Interests' argument.

Finally, Ergon does not intend to put on unnecessary and endlessly repetitive evidence of Privocean Interests' fault in causing the breakaway. For example, Ergon does not intend to harp on the condition of the mooring lines of the M/V PRIVOCEAN or the mooring capabilities of the CMT dock. Ergon admittedly does not have a rope expert or a mooring expert to discuss these topics. Ergon does, however, intend to introduce pointed evidence as to the actions and inactions of Privocean's crew and management that caused the breakaway and lead to the destruction of Ergon's dock and the damages Ergon and M/T BRAVO suffered. If the court is going to entertain Privocean Interests' theory that something Ergon's dock man did in the chaos of it all was a contributing cause, then Ergon must be permitted to demonstrate to the court how Privocean Interests could have prevented that chaos and was on notice of its imminent possibility days before

the accident. The story really begins there. Ergon expects that its entire case will take no more than three or four days dependent upon the length of cross-examination.

For the reasons discussed above, Ergon cannot agree to Privocean Interests' proposed stipulation as it is currently written and Ergon prays that this Court permit Ergon to introduce the evidence Ergon sees fit as discussed herein.

Respectfully submitted,

*/s/ Catherine C. Darden*
C. BARRETT RICE (#30034)
JEFFERSON R. TILLERY (#17831)
HANSFORD P. WOGAN (#34825)
CATHERINE C. DARDEN (#35090)
JONES WALKER LLP
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:   (504) 582-8238
Facsimile:    (504) 589-8238
E-Mail:       brice@joneswalker.com
              jtillery@joneswalker.com
              kdarden@joneswalker.com
              fwogan@joneswalker.com

*Attorneys for, Ergon - St. James, Inc., Ergon, Inc., Ergon Refining, Inc., Magnolia Marine Transport Co. and Certain Underwriters*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above has been sent to opposing counsel, via CM/ECF electronic filing, via facsimile, via e-mail and/or by placing a copy of same in the U.S. mail, properly addressed, postage prepaid, this 20th day of April, 2018.

*/s/ Catherine C. Darden*